**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HBI INNOVATIONS, LLP<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | Case No.: 26-cv-09380<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff, HBI INNOVATIONS, LLP d/b/a HBI Innovations ("Plaintiff" or "HBI"),[1] hereby alleges as follows against the individuals, corporations, limited liability companies, partnerships, unincorporated associations and foreign entities identified on Schedule A[2] to this Complaint (collectively, "Defendants"):

## INTRODUCTION

1. This action has been filed by Plaintiff to combat online counterfeiters who trade on Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's trademarks, which are covered by U.S. Trademark Registration Nos. 3,422,929; 4,074,036; 4,647,824; 4,675,473; 6,469,902; 7,437,659; and 7,676,512 (the "RAW Trademarks").

---

[1] HBI was formerly known as BBK Tobacco & Foods, LLP d/b/a HBI International.

[2] Plaintiff is filing a motion to temporarily seal Schedule A simultaneously with the filing of this Complaint.

2. The RAW Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the RAW Trademarks are attached hereto as **Exhibit 1**.

3. This is also an action for patent infringement to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Plaintiff's design patent covered by U.S. Patent No. US D802,036 S (the "RAW Patent", together with the RAW Trademarks, the "RAW Intellectual Property"). The RAW Patent is valid, subsisting, and in full force and effect. Plaintiff is the owner and lawful assignee of all rights, title, and interest in and to the RAW Patent, which was duly and legally issued by the U.S. Patent and Trademark Office. A true and correct copy of the RAW Patent is attached hereto as **Exhibit 2**.

4. Defendants are improperly advertising, marketing, and/or selling unauthorized and noncompliant products by reference to marks identical or substantially similar to Plaintiff's RAW Trademarks, and/or which embody the design(s) depicted in the RAW Patent (the "Counterfeit Products"). By selling Counterfeit Products that purport to be genuine and authorized products using the RAW Intellectual Property (the "RAW Products"), Defendants cause confusion and deception in the marketplace.

5. Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms eBay, Shein, and Temu (collectively, the "Marketplace Platforms").

6. Defendants design their online marketplace accounts to appear to be selling genuine products bearing, using, and/or embodying the RAW Intellectual Property while selling inferior imitations of such products.

7. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

8. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting and/or infringing of the RAW Intellectual Property, as well as to protect consumers from unknowingly purchasing Counterfeit Products.

9. As a result of Defendants' actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and goodwill. Plaintiff is further irreparably damaged from the loss of its lawful rights to exclude others from making, using, selling, offering for sale, and/or importing its patent. Plaintiff therefore seeks injunctive and monetary relief.

10. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

11. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

12. This Court has original subject matter jurisdiction over the trademark counterfeiting and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)–(b). This Court has original subject matter jurisdiction over the patent infringement claim arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a).

13. This Court has jurisdiction over the unfair deceptive trade practices claim in this action that arises under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claim is so related to the federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

14. Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1), (3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District; derive substantial revenue from business transactions in New York and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

15. In addition, because Plaintiff sells genuine merchandise bearing, using, and/or embodying the RAW Intellectual Property in this Judicial District, Defendants' illegal counterfeiting and infringing actions have injured Plaintiff in this Judicial District through lost sales and customers. Defendants' actions have also harmed Plaintiff by confusing and deceiving

consumers in this Judicial District who can view Defendant Internet Stores such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

16. For example, Defendant Internet Stores accept orders for Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Exemplar screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached as Exhibit 3 to the Declaration of Matthew Colvard.

17. Upon information and belief, Defendants also were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in New York and in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the United States, including in New York and this Judicial District, can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the United States, including in New York and this Judicial District, as a means for establishing regular business with the United States, including in New York and this Judicial District.

18. Defendants have transacted business with consumers located in the United States, including in New York and this Judicial District, for the sale and shipment of Counterfeit Products.

19. Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(b) because Defendants have committed acts of trademark and/or patent infringement in this Judicial District and do substantial business in this Judicial District.

**THE PLAINTIFF**

20. Plaintiff HBI is a limited liability partnership organized and existing under the laws of Arizona, with its principal place of business in Phoenix, Arizona.

21. Plaintiff is the registered owner of the RAW Trademarks (attached as **Exhibit 1**), as follows:

| U.S. TM Reg. | Trademark | Registration Date |
|---|---|---|
| 3,422,929 |  | May 6, 2008 |
| 4,074,036 | RAW | Dec. 20, 2011 |
| 4,647,824 |  | Dec. 2, 2014 |

| U.S. TM Reg. | Trademark | Registration Date |
|---|---|---|
| 4,675,473 | RAW | Jan 20, 2015 |
| 6,469,902 | RAW BLACK | Aug. 31, 2021 |
| 7,437,659 |  | July 9, 2024 |
| 7,676,512 |  | Feb. 4, 2025 |

22. Plaintiff is also the owner and lawful assigned of the RAW Patent (attached as **Exhibit 2**), as follows:

| U.S. Patent No. | Claim | Issue Date |
|---|---|---|
| D802,036 S |  | Nov. 7, 2017 |

**THE DEFENDANTS**

23. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China ("China").

24. Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

**THE RAW PRODUCTS**

25. Plaintiff is a leading supplier and distributor of rolling papers and smoking accessories, which has earned Plaintiff an international reputation for quality, reliability, and value. Marketed as the "craft beer of rolling papers," Plaintiff's RAW Products are associated with the quality and innovation that the public has come to expect from Plaintiff's products.

26. Plaintiff is the official source of RAW Products in the United States, which include, among others, the RAW 114 Rolling Paper and other rolling papers and smoking accessories bearing Plaintiff's unbleached papers, signature watermark, and vegan formulation. Plaintiff has received several awards and industry recognitions for the RAW Products, including the Best World Wide winner and USA winner in the Rolling Papers category at the 2nd Annual International Cannabis Awards in 2025 for the RAW® rolling papers.

27. Since at least 2002, Plaintiff has developed and marketed high-quality products incorporating the RAW Intellectual Property, starting with its aforementioned RAW 114 Rolling

Paper and steadily expanding the line with new products since then. The RAW Intellectual Property has been the subject of substantial and continuous marketing and promotion by Plaintiff in the industry and to consumers.

28. The RAW Intellectual Property is distinctive and identifies the merchandise as goods from Plaintiff. The registrations and patent for the RAW Intellectual Property constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b) and 35 U.S.C. § 282.

29. From the date of the creation of the first RAW Products to the present, Plaintiff and its authorized retailers are and have been the sole and official source of genuine RAW Products in the United States and across the globe.




**Raw Black Classic Rolling Papers**
(U.S. TM Reg. Nos. 6,469,902 and 7,437,659)




**Rawtomatic Rolling Box**
(U.S. TM Reg. No. 4,074,036)




**Raw Cone Loader**
(U.S. Pat. No. D802,036 S)

*Exemplars of Genuine RAW Products Incorporating the RAW Intellectual Property*

30. Each of the RAW Trademarks has been continuously used and never abandoned. Since Plaintiff launched its RAW Products, Plaintiff has followed a defined strategy for

positioning its brand, marketing and promoting the product line in the industry and to consumers, and establishing distribution channels. Plaintiff's promotional efforts for the RAW Products include, by way of example but not limitation, trade shows, e-mail marketing, catalogs, culture events, sponsorships, brand collaborations, magazine advertisements, and social media advertising campaigns on platforms such as YouTube, Instagram, Twitter (X), and TikTok. Plaintiff has expended substantial time, money, and other resources in advertising and otherwise promoting the RAW Products.

31. The RAW Products have become enormously popular, driven by Plaintiff's arduous quality standards and innovative trademarked designs. These designs are broadly recognized by consumers as being sourced from Plaintiff. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff and its RAW Products.

32. Plaintiff owns all rights, including without limitation, the rights to reproduce the trademarked designs in copies, to prepare derivative works based upon the trademarked designs, and to distribute copies of the trademarked designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in the RAW Trademarks as the owner of those trademarks.

33. Plaintiff is also the owner and lawful assignee of all rights, title, and interest in and to the RAW Patent.

34. The RAW Products in many instances embody at least a portion of the design(s) depicted in the RAW Patent.

## THE DEFENDANTS' UNLAWFUL CONDUCT

35. The success of the RAW Products has resulted in significant counterfeiting. Plaintiff has identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce sites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and/or import Counterfeit Products to consumers in this Judicial District and throughout the United States.

36. Defendants have persisted in creating such online marketplaces and internet stores that contribute to the hundreds of billions of dollars of counterfeit goods sold each year. According to an intellectual property rights seizure statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone.[3] *See also* Declaration of Martin Yi ("Yi Decl."), filed simultaneously with the filing of this Complaint, Ex. 2.

37. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine RAW Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and/or PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

[3] U.S. Customs & Border Prot., *Intellectual Property Rights Seizure Statistics: Fiscal Year 2024* (Pub. No. 3964-0125), https://www.cbp.gov/sites/default/files/2025-01/IntellectualPropertyRightsSeizureStatisticsFiscalYear2024%20FINAL.pdf (last visited Oct. 21, 2026).

38. Plaintiff has not licensed or authorized Defendants to use the RAW Intellectual Property. None of the Defendants are authorized retailers of genuine RAW Products.

39. Defendants also deceive unknowing consumers by using without authorization the RAW Intellectual Property within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for RAW Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine RAW Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

40. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information or omitted cities or states.

41. Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

42. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one

another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

43. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[4]

44. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.[5] Rogue servers are notorious for ignoring take-down demands sent by brand owners.

45. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. According to the previously cited U.S. Customs and Border Protection report on seizure statistics, in fiscal year 2024, "97% of [Intellectual Property Rights] seizures in the cargo environment occurred in the de minimis shipments."[6] *See also* Yi Decl. Ex. 2. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts.

---

[4] *Buyers Beware! ICE HIS and CBP in Boston warn consumers about counterfeit goods during holiday shopping season*, U.S. Immigration and Customs Enf't (Dec. 11, 2019), https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites").

[5] Rogue internet servers and sellers are a well-known tactic that have even been covered in Cabinet-level agency reports. *See* Office of the U.S. Trade Representative, *2023 Review of Notorious Markets for Counterfeiting and Piracy* 18, 21, 24–25 (2024), https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and_Piracy_Notorious_Markets_List_final.pdf.

[6] U.S. Customs & Border Prot., *supra* note 2.

46. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. Analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

47. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the RAW Intellectual Property in connection with the advertisement, distribution, offering for sale, sale, and/or import of Counterfeit Products into the United States and New York over the internet.

48. Each Defendant Internet Store offers shipping to the United States, including New York in this Judicial District, and each Defendant has offered to sell Counterfeit Products into the United States, including New York in this Judicial District.

49. Defendants' use of the RAW Intellectual Property in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

50. Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the RAW Intellectual Property, of the fame and incalculable goodwill associated therewith, and of the popularity and success of the RAW Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

51. Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to

Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff and the RAW Products.

**<u>FIRST CAUSE OF ACTION</u>**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**
**[Against Defendants Designated in Schedule A to the Complaint]**

52. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–51 of this Complaint.

53. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered RAW Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The RAW Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under the RAW Trademarks.

54. Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with the RAW Trademarks without Plaintiff's permission.



*Exemplar of Genuine Product and Image Incorporating Plaintiff's RAW Trademarks*

*COMPARED TO*

*Exemplar of Counterfeit Product Sold by Defendant*




55. Plaintiff is the registered owner of the RAW Trademarks and official source of RAW Products. The U.S. Registrations for the RAW Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the RAW Trademarks and are willfully infringing and intentionally using counterfeits of the RAW Trademarks. Defendants' willful, intentional, and unauthorized use of the RAW Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

56. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

57. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of Counterfeit Products.

58. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known RAW Trademarks.

**SECOND CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**[Against Defendants Designated in Schedule A to the Complaint]**

59. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1–51 of this Complaint.

60. Defendants' promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

61. By using the RAW Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

62. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

63. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## THIRD CAUSE OF ACTION
## DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)
## [Against Defendants Designated in Schedule A]

64. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–51 of this Complaint.

65. Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Counterfeit Products that infringe directly and/or indirectly the RAW Patent.

66. For example, below is a comparison of a figure from the RAW Patent and an image of a Defendant's Counterfeit Products sold on a Defendant Internet Store.



*Exemplar of Genuine Product and Image Incorporating Plaintiff's RAW Patent*

*COMPARED TO*

*Exemplar of Counterfeit Product Sold by Defendant*




67. Defendants' activities constitute willful patent infringement under 35 U.S.C. § 271.

68. Defendants have infringed the RAW Patent through the above acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and/or importing the patented invention.

69. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

70. Plaintiff is entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. § 289, including Defendants' profits.

**<u>FOURTH CAUSE OF ACTION</u>**
**UNFAIR COMPETITION (New York Common Law)**
**[Against Defendants Designated in Schedule A]**

71. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1–51 of this Complaint.

72. Plaintiff has not licensed or authorized Defendants to use the RAW Intellectual Property, and none of the Defendants are authorized retailers of genuine RAW Products.

73. Defendants knowingly and intentionally trade upon Plaintiff's reputation and goodwill by selling, offering for sale, and/or importing products in connection with Plaintiff's RAW Intellectual Property.

74. Defendants' promotion, marketing, offering for sale, sale, and/or importing of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

75. Defendants knew, or should have known, that their promotion, marketing, offering for sale, sale, and/or importing of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

76. In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are RAW Products including, for example, by (i) using SEO tactics and social media to misdirect customers seeking RAW Products to the Defendant Internet Stores; (ii) using deceptive advertising practices within the text and meta data of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

77. On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

78. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**DEMAND FOR RELIEF**

79. Plaintiff hereby demands judgment as follows:

a. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from the following:

   i. using the RAW Intellectual Property or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine RAW Product or is not authorized by Plaintiff to be sold in connection with the RAW Intellectual Property;

   ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine RAW Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the RAW Intellectual Property;

   iii. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

iv. further infringing the RAW Intellectual Property and damaging Plaintiff's goodwill;

v. otherwise competing unfairly with Plaintiff in any manner; and

vi. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear and/or embody any of Plaintiff's Intellectual Property, or any reproductions, counterfeit copies, or colorable imitations thereof;

b. Entry of an Order that the Marketplace Platforms, including without limitation eBay, Shein, Temu, and any other online marketplace account through which Defendants are selling Counterfeit Products disable and cease providing services for any accounts through which Defendants are selling Counterfeit Products, and disable and cease displaying any advertisement used by or associated with Defendants in connection with their sale of Counterfeit Products;

c. That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the RAW Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

d. That Plaintiff be awarded all profits realized by Defendants from Defendants' infringement of Plaintiff's RAW Patent, pursuant to 35 U.S.C. § 289;

e. In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the RAW Trademarks, and statutory damages pursuant to 35 U.S.C. § 289 of not less than $250 for each and every use of the RAW Patent;

f. That Plaintiff be awarded its reasonable attorneys' fees and costs; and

g. That the Court award any and all other relief that it deems just and proper.

**DEMAND FOR JURY TRIAL**

80. Plaintiff hereby demands a trial by jury.

Dated: October 27, 2026

Respectfully submitted,

By: */s/ Martin Yi*

Martin Yi
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
myi@bsfllp.com

*Counsel for Plaintiff HBI Innovations, LLP*